UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOLOGIC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>IZI MEDICAL PRODUCTS, LLC, a Delaware limited liability company,<br><br>Defendant. | Civil Action No. 1:11-cv-10619-WGY<br><br>**HOLOGIC'S OPPOSITION TO IZI'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Hearing: September 15, 2011, 2:00 p.m. |

**HOLOGIC'S OPPOSITION TO IZI'S MOTION
FOR JUDGMENT AS A MATTER OF LAW**

I.     INTRODUCTION

After a five day trial, the Jury rendered a unanimous verdict that the CareCushion mammography cushion (the "CareCushion"), manufactured and sold by defendant IZI, infringes claim 17 of U.S. Patent No. 6,577,702 ("the '702 patent) and claim 33 of U.S. Patent No. 7,502441 ("the 441 patent") (together, the "Infringed Claims").[1]  The Jury's verdict of infringement was supported by ample -- indeed, overwhelming -- evidence and was fully consistent with the Court's claim constructions.

Although characterized as a motion for JMOL, IZI's motion does not -- as it must -- directly challenge the sufficiency of the evidence in view of the Court's *actual* claim constructions.  Instead, IZI posits various alternative claim constructions to the ones under which the case was tried and then urges the Court to evaluate the evidence in view of this alternative claim scope.  Such arguments are clearly improper after the Jury has reached its verdict and in the context of a motion for JMOL.  Accordingly, IZI's motion should be denied.

II.    APPLICABLE STANDARD

"A renewed motion for judgment as a matter of law under Rule 50(b) (the rule formerly known as 'judgment notwithstanding the verdict' or J.N.O.V.) is subject to a demanding standard."  *Astrolabe, Inc. v. Esoteric Techs. Pty, Ltd.*, No. 01-11352-PBS, 2002 U.S. Dist. LEXIS 5764, at *6 (D. Mass. Mar. 29, 2002).  Judgment as a matter of law under Rule 50(b) is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party  *See* Fed.R.Civ.P. 50(b) (which incorporates the standard set out in Rule 50(a)(1)).  "[A] district court may grant [JMOL] only if it finds that the evidence could lead a reasonable person to only one conclusion."  *Gallagher v. Wilton Enters., Inc.*, 962 F.2d 120, 124

---

[1] The Court also granted judgment as a matter of law that IZI failed to show by clear and convincing evidence that either of the Infringed Claims is invalid.  IZI does not challenge that ruling, nor does it request a new trial on any issue.

(1st Cir. 1992).  In short, the granting of a renewed motion for judgment as a matter of law is "appropriate only where 'there is a total lack of evidence in support of [the] plaintiff's case.'" *Astrolabe, Inc.*, 2002 U.S. Dist. LEXIS 5764 at *7.

"[A] trial court is 'compelled, therefore, even in a close case, to uphold the verdict unless the facts and inferences, when viewed in the light most favorable to the party for whom the jury held, point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have arrived at this conclusion.'"  *Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir. 1991).

### III.   ARGUMENT

#### A.   The Jury Had Ample Evidence To Find That The "Installing" Limitation Of Claim 17 Is Practiced When The CareCushion Is Used

IZI's motion with respect to claim 17 should be rejected because it is nothing more than an improper attempt to urge a thirteenth hour change in the Court's claim construction.  Claim 17 of the '702 patent states in relevant part:

> installing a radiolucent cushioning element on a patient contact surface of the compression plate in an x-ray field of the mammography unit

(Declaration of Jennifer Sklenar In Support of Plaintiff Hologic, Inc.'s Opposition to IZI's Motion for Judgment as a Matter of Law ("Sklenar Decl.") Trial Ex. 1 at 7:20-22.)  The Court construed the terms "installing" and "cushioning element" as follows:

> "installing":  applying an adhesive on the cushioning element
>
> "cushioning element": cushion

Dkt. 31 at 6:22-7:1, 8:12; 16:22-23.[2]  In its Motion, IZI now insists that the referenced *adhesive* must adhere to the compression surface in the x-ray field of the mammography unit -- a construction that finds no basis in the claim language or the Court's construction.  *See* Dkt. 66 at 2.

### 1. IZI should not be permitted to raise a new claim construction of the "installing" limitation for the first time in a JMOL motion.

Even if it were generally appropriate to challenge the Court's claim construction in the context of a JMOL motion (which it is not as explained below), IZI has no doubt waived any right to assert its proposed construction in this case.  IZI did not propose the construction it now advances during the Markman process.  (*See* Dkt. 29 at 8.)  Rather, its counsel stated that he had no objection when the Court announced its construction of the "installing" limitation during the *Markman* hearing.  (*See* Dkt. 31 at 16:22-24.)[3]  Moreover, at the beginning of trial Hologic alerted the Court to IZI's effort to alter the Court's construction of "installing" (to which IZI had previously assented) to require that the adhesive be in the x-ray field, and the Court rejected this misconstruction:

> MS. SKLENAR: . . . I think the issue is *[IZI is] actually taking the construction and saying it requires where, <u>that an adhesive be applied in the field of the X ray</u>*.

---

[2]  In response to a question from the Jury during their deliberations, the Court expanded on its construction of "installing" to clarify that the phrase "cushioning element" within the definition means "cushion":

  I've defined installing as applying an adhesive on the cushioning element.  Then I've defined cushioning element as cushion. . . .  And if I put those together in the context of this claim and this element it means applying an adhesive on, and I'll say on the radiolucent cushion, on a patient contact surface of the compression plate in an x-ray field of the mammography unit.

Dkt. 58 at 575:24-578:2.

[3]  "THE COURT:  Applying an adhesive on the cushioning element.  That's what I propose.  That's Right?  MR. GARVIN:  We have no objection."

- 4 -

> THE COURT: So we're clear, I didn't say that and that's not what it says.

Dkt. 54 at 6:11-16. IZI did not object, or even respond, to the Court's comment. *Id.* at 6:25-7:3.[4]

IZI also did not object to the Court's claim construction when the Court instructed the Jury. *See* Dkt. 58 at 534:16-536:21.

Despite its failure to raise its current claim construction argument at any point prior to its present motion, IZI now seeks to have the Court evaluate the sufficiency of the Jury's verdict under the very construction the Court explicitly rejected at the beginning of trial. This is plainly improper. Where there is no objection to the Court's claim construction during trial, the only appropriate issue for JMOL is whether substantial evidence supports the Jury verdict under the claim construction actually provided to the Jury. *See Cytologic Corp. v. Ventana Medical Systems, Inc.* 424 F.3d 1168, 1177 (Fed. Cir. 2005). IZI is thus simply not permitted as a matter of settled law to base its JMOL motion on an alternative claim construction argument.

### 2. There is more than sufficient evidence of infringement of the "installing" limitation under the Court's actual construction.

When evaluated under the actual construction given to the Jury, there is abundant evidence that use of the CareCushion satisfies the "installing" limitation. IZI's own CEO admitted that an adhesive is applied to the cushioning element. Dkt. 56 at 370:15-23. The evidence also showed that the CareCushion is installed on the compression plate (*i.e.*, bucky) such that the CareCushion is on a patient contact surface of the compression plate in an x-ray field of the mammography unit.[5] *See, e.g.*, Sklenar Decl. Trial Ex. 19 at IZIMED000251

---

[4] "THE COURT: All right. I'm not going back on what I've done thus far. So defense? MR. GARVIN: I don't think I have anything to add, your Honor."

[5] Notably, IZI's expert, Dr. Harrigan, testified that use of the CareCushion does not meet the "installing" limitation of claim 17 because the CareCushion is not a cushion but a foam cushion with a plastic backing. *See* Dkt. 57 at 472:16-473:8, 473:23-474:3. Dr. Harrigan testified, that in his opinion, it was the plastic backing that was installed on the bucky, not the foam cushion. *Id.*

(Instructions for Use submitted with 510(k)), Trial Ex. 21 at IZIMED000375 (CareCushion Design History File), Trial Ex. 137 at IZIMED002775 (IZI Medical Products brochure), Trial Ex. 319 (CareCushion instructions insert included in product packaging), Trial Ex. 321 at MPAD014054 (IZI Medical Products webpage regarding CareCushion), Trial Ex. 346 (CareCushion Instructional Video).

The Jury also heard from Hologic's expert, Dr. Brenner, who testified that the use of the CareCushion literally meets the "installing" limitation of claim 17 of the '702 patent:

> So that one way to read this is that applying an adhesive on the cushioning element, the cushioning element is on the patient contact surface of the compression plate in the x-ray field of the mammography unit. So you have cushion on the plate serving its purpose and adhesive is applied to that cushion element.

Dkt. 57 at 420:18-421:9, 422:2-6. That testimony is consistent with the Court's claim construction, and the Jury was entitled to credit that testimony and related documentary evidence. Thus, there is no basis to upset the Jury's verdict.

### B. The Jury Had Ample Evidence To Find That The "Applying" Limitation Of Claim 33 Is Practiced When The CareCushion Is Used

IZI's arguments with respect to the "applying" limitation of claim 33 of the '441 patent are also procedurally improper and should be rejected. Again, rather than disputing the sufficiency of the evidence in view of the Court's actual claim construction, IZI essentially seeks reconsideration of the claim construction ruling.

Claim 33 of the '441 patent states in relevant part:

> applying a radiolucent comfort device to the compression surface and the front face surface of the first compression device

---

Significantly, he did not opine that the plastic backing is not "installed" on the bucky because the adhesive tape of the CareCushion is not in the x-ray field.

Sklenar Decl. Trial Ex. 3 at 8:4-6.  The Court construed the terms "applying" and "comfort device" as follows:

> "applying":  applied so that it is held in place
>
> "comfort device": a cushion that is radiolucent, comfortable to the body part that comes in contact with it, and produces no significant visual impact on the mammogram

Dkt. 31 at 9:24-10:1.

### 1. IZI should not be permitted to reargue claim construction of the "applying" limitation in the context of a JMOL motion.

In its Motion, IZI urges the Court to narrow its construction of the "applying" limitation to require specific types of *attachment* to the compression surface, namely by an adhesive, a non-adhesive gel, or a textured pad element.  *See* Dkt. 66 at 3-7.  Essentially, IZI argues that the cushion can be held in place only if it is attached, and the cushion can only be attached through one of these specific types of mechanisms on each surface that touches the bucky.  This is a similar argument to the very tortured construction that IZI sought unsuccessfully during the *Markman* phase.  Dkt. 29. at 8-13.  Notably, when the Court suggested the construction "applied so that it is held in place" as an alternative to each parties' proposed language, IZI did not object. *See* Dkt. 31 at 20:16-21.  IZI also did not object when the Court provided that construction to the Jury as part of its instructions.  *See* Dkt. 58 at 535:3-536:21.  As explained above, it is procedurally improper to try to re-argue or narrow the claim construction under the guise of a JMOL motion, particularly here where IZI has never objected to the Court's current construction. *See, e.g.*, *Cytologic Corp.*, 424 F.3d at 1177.

Even if it were appropriate to reconsider claim construction at this late stage, the claim construction doctrines advanced by IZI either have no bearing to the present analysis or undermine its arguments.  For example, IZI argues that the "*means* disclosed in the '441 patent

consists of adhesive, non-adhesive gel, or having the pad element textured to make it tacky." *See* Dkt. 66 at 6 (emphasis added). But claim 33 is a method claim and the "applying" limitation is not written in the means-plus-function format. Accordingly, the claim is not governed by 35 U.S.C. §112 ¶ 6, and the performance of the claimed method is not limited to the particular structures or embodiments identified in the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (claims are not normally construed as limited to express embodiments "because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments"); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1058 (Fed. Cir. 2009) (reaffirming that even when only one embodiment is disclosed, the claims generally should not be narrowed to cover only the disclosed embodiment). Thus, it would be incorrect to limit the claim to a specific embodiment disclosed in the specification.

IZI is similarly misguided when it relies on the differences between claim 34 and claim 32. Claim 33 (which was asserted at trial) and claim 34 both depend from claim 32. Claim 34 further narrows claim 32 to state that the "applying" is performed "by releasably attaching an adhesive layer . . . ." Sklenar Decl. Trial Ex. 3 at 8:16-20. Under well-established principles of claim differentiation, including the fact that a dependent claim is narrower than the claim from which it depends, the fact that claim 34 narrows the claim scope to "*attachment*" through the use of an "*adhesive layer*" means that "applying" in claim 32 should not be construed to be limited to attachment through an adhesive layer or other specific types of attachment. *See Applied Med. Res.Corp. v. United States Surgical Corp.,* 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[I]n the absence of any evidence to the contrary, we must presume that the use of . . . different terms in

the claims connotes different meanings.") (internal marks and citations omitted). Thus, claim 34 further demonstrates the incorrectness of the construction advanced by IZI in its motion for JMOL.

While claim 33 requires "applying" (*i.e.*, applied so that it is held in place) the cushion "to the compression surface and the front face surface of the first compression device," nothing in the claim or the Court's construction equates "appl[ying] so that it is held in place" to *attachment* -- a term that is used in other, unasserted claims -- or requires that there be an adhesive or other specific type of attachment mechanism on the portion of the cushion that is adjacent the compression surface. Indeed, IZI's own technical expert admitted at trial that, assuming something is held in place, "that applying does not necessarily mean the same thing as directly attaching," and that "applying in fact is a broader notion than direct attachment." Dkt. 57 at 493:21-494:2.

### 2. There is more than sufficient evidence of infringement of the "applying" limitation under the Court's actual construction.

Under the Court's actual claim construction, the Jury was presented with overwhelming evidence to conclude that the use of the CareCushion meets the "applying" limitation of claim 33 of the '441 patent. For example, the Jury saw IZI's instructions for use as well as the companion instructional video showing the CareCushion being applied to a bucky (*i.e.*, the compression surface and the front face surface of the first compression device) so that it was held in place:



Sklenar Decl. Trial Ex. 346 Bates No. MPAD14262 at 00:55



*Id.* at 00:56



*Id.* at 01:02

The Jury also reviewed IZI's statements in its marketing materials and documents submitted to the FDA that the CareCushion is *applied* to the mammography bucky, that it "securely adheres" to the bucky, that it will "not slip" once applied to the bucky, and that it is "designed with an adhesive front side and stable bottom to keep the cushion firmly in place." *See, e.g.*, Sklenar Decl. Trial Ex. 18 at IZIMED000159, Trial Ex. 19 at IZIMED000251, Trial Ex. 321 at MPAD014054, Trial Ex. 346.

Also, IZI's CFO testified that it was an important design goal of the CareCushion to make sure it did not shift under operation. Dkt. 56 at 319:19-2. And IZI's CEO admitted that the CareCushion was not designed to allow it to slide back and forth across the bucky, *id.* at 339:5-7, that the CareCushion as commercially sold easily and securely adheres to the bucky and can be quickly removed between patients, *id*. at 353:8-11, and that the CareCushion is held firmly in place when used according to its instructions for use, *id*. at 353:12-14.

The Jury also heard from Dr. Brenner, Hologic's technical expert, who testified based on his review of the evidence and expertise in the field, that the CareCushion is applied to the bucky

so that it is held in place. Dkt. 57 at 415:13-25, 416:18-417:3. Dr. Brenner explained to the Jury that if the CareCushion were not in fact held in place, it would create a motion artifact rendering the x-ray image compromised.[6] *Id*. at 415:23-25. The Jury was justified in relying on Dr. Brenner's testimony, as well as the other evidence presented during trial, to conclude that the CareCushion is applied so that it is held in place "to the compression surface and the front face surface of the first compression device" as required by the "applying" limitation of claim 33 of the '441 patent.[7]

### C. The Jury Had Ample Evidence to Find That The Entire Unitary CareCushion Product Is A "Cushion" As Construed By The Court

IZI's final argument that the plastic substrate of the CareCushion prevents infringement of the "installing" and "applying" limitations of claims 17 and 33 of the '702 and '441 patents is based on the premise that, properly considered, the plastic substrate of the CareCushion cannot be part of the cushion. *See* Dkt. 66 at 7. This argument is procedurally improper as it was not raised as part of IZI's motion for a directed verdict. *See Correa v. Hospital San Francisco,* 69 F.3d 1184, 1196 (1st Cir. 1995) ("A motion for judgment as a matter of law made at the close of all the evidence preserves for review only those grounds specified at the time, and no others."); *Perdoni Brothers, Inc. v. Concrete Sys., Inc.*, 35 F.3d 1, 3 (1st Cir. 1994) (The law is crystal clear

---

[6] Even IZI's own expert, Dr. Harrigan, testified that it would be reasonable to rely on Dr. Brenner's testimony on whether the CareCushion moves or doesn't move during a mammography procedure. Dkt. 57 at 495:14-17.

[7] IZI argues that the testimony of Dr. Brenner is insufficient to establish infringement because his assertion "that the patient's breast holds the CareCushion in place to the compression surface . . . ignores the sequence of steps required by the claims." *See* Dkt. 66 at 6. IZI sequence-based argument is misplaced because it misstates Dr. Brenner's testimony. Dr. Brenner plainly testified that the CareCushion is applied and held in place even *before* a patient's breast is placed on top of the cushion (*see* Dkt. 57 at 415:18-25), an opinion that is consistent with the testimony of IZI's witnesses, its instructional video, and the documentary evidence. IZI presented no evidence to the contrary other than sheer speculation that the CareCushion might fail to stay in place between its application to the bucky and until removed at the end of the procedure. Such speculation is legally insufficient to upset the Jury's verdict.

that a 'party may not base its motion for a judgment n.o.v. on a ground that was not argued in its motion for directed verdict.'") (citation omitted).

Moreover, there can be no question that, once again, IZI is improperly seeking to reargue claim construction -- this time of the "cushioning element" and "comfort device" limitations -- to circumvent the largely unchallenged evidence of infringement under the Court's actual construction. Indeed, IZI's own expert has conceded that he understood that the Court's claim construction of these terms was not so narrow as to exclude a cushion that includes a plastic substrate. Specifically, he admitted at trial that the Court's construction did not require any specific type of cushion, Dkt. 57 at 485:10-13, and that "what an everyday person would call a cushion could have a plastic substrate layer," *id.* at 489:12-17. Thus, once again, it is improper for IZI to attempt to reargue claim construction in the context of a JMOL motion. *See Cytologic Corp.*, 424 F.3d at 1168.

### 1. IZI should not be permitted to reargue claim construction of the "cushioning element" and "comfort device" in the context of a JMOL motion.

Even if it were appropriate for IZI to revisit claim construction at this late stage, it has no right to do so on the present record. The Court rejected IZI's proposed construction of "cushioning element" and "comfort device," which was IZI's attempt to indirectly define "cushioning element" and "comfort device" as a single piece of foam, and also refused to import the word "direct" into the construction of the terms "installing" and "applying" as suggested by IZI. *See* Dkt. 31 at 7:2-8:18; 11:3-12:5, 25:25-26:1. IZI did not object to the Court's actual constructions at the time and when provided to the Jury. *See* Dkt. 31 at 8:7-12, 10:19-12:9, 16:22-24, 25:21-26:21; Dkt. 58 at 534:16-536:21.

Similarly, IZI's now *third attempt* to rely on the Townsend patent to influence the Court's claim construction or avoid infringement is misplaced procedurally, and is factually and

legally improper.  According to IZI, the patent applicants somehow conceded when discussing the Townsend prior art patent during prosecution that the terms "cushioning element" and "comfort device" "did not encompass a substrate intervening between the pad and the compression surface."  *See* Dkt. 66 at 8.  This is the very same argument that IZI unsuccessfully raised during the claim construction process.  *See* Dkt. 29 at 9-12.  This is also the very same argument that IZI sought to inject into the trial without success.  *See, e.g.*, Dkt. 57 at 439:12-440:9.[8]  Indeed, the Townsend patent was not even admitted into evidence.

Even if IZI's argument with respect to the Townsend patent could properly be considered on JMOL (which it cannot), IZI's argument is wrong as a matter of fact and law.  IZI mischaracterizes the Townsend patent as a pad attached to a compression surface through an intervening structure.  In fact, the Townsend patent relates to a pad glued to a removable sleeve into which an x-ray cassette (and not a compression surface) could be inserted.  Dkt. 66-3 at 1.  Because there was no compression surface, let alone installation or application to a compression surface through an intervening material, the statement with respect to the Townsend reference is irrelevant to the present dispute, and certainly not a "clear and unmistakable surrender" of subject matter that would justify narrowing the claims as suggested by IZI.  *See Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) ("[F]or prosecution disclaimer to attach our precedent requires that alleged disavowing actions or statements made during prosecution be both clear and unmistakable. . . . [T]he same standard applies to the doctrine of argument-based estoppel.") (internal quotes and citations omitted); *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) ("To invoke argument-based

---

[8]   Instead, the Court ruled that the Townsend patent was not relevant to the issue of literal infringement; that it would be relevant, if at all, to prosecution history estoppel as it pertains to infringement under the doctrine of equivalents.  *See id.* at 440:10-443:10.  Infringement under the doctrine of equivalents, however, was not presented to the Jury.

estoppel, the prosecution history 'must evince a clear and unmistakable surrender of subject matter.'"). Accordingly, the Townsend patent has no bearing to any issue that can properly be addressed on a motion for JMOL.

### 2. There is more than sufficient evidence that the CareCushion is a "cushion."

The Jury had a legally sufficient evidentiary basis to find that the plastic substrate of the CareCushion is part of a cushion. Indeed, one of the main reasons there was a trial was to permit a jury to decide this very *factual* question. IZI's own counsel admitted that the Jury's answer to this question would likely be outcome determinative:

> MR. GARVIN: [I]t's just simply the plaintiff saying the foam and the plastic is a cushion and the cushion is attached. If they're right, they win. I hate to say it. I mean, if they're right, it's infringement.
>
> We say no, our cushion is something that's attached to a piece of plastic and that cushion is not what is attached, it is that piece of plastic.

Dkt. 60 at 6:20-7:2.[9]

The Jury ultimately agreed with Hologic that the CareCushion is a unitary product, and that the unitary product is a cushion as required by the Court's claim construction of "cushioning element" and "comfort device."[10] The evidence at trial that supported their decision was overwhelming:

---

[9] Although at the hearing on IZI's summary judgment motion the Court offered to resolve that dispute, it recognized that it would be doing so in its role as the fact finder, not in its role as the decider of the law. *See* Dkt. 60 at 8:14-15, 10:20 ("I will decide it. And then we can then -- then I am the fact finder as well as the law explainer. . . . And I will be the fact finder.").

[10] The Court construed "comfort device" to mean "a cushion that is radiolucent, comfortable to the body part that comes in contact with it, and produces no significant visual impact on the mammogram." For the purposes of this argument, however, the latter requirements of the construction have no bearing on the present discussion.

- IZI's own technical expert admitted that "what an everyday person would call a cushion could have a plastic substrate layer."[11]  *See* Dkt. 57 at 489:12-17.

- The CareCushion is manufactured for IZI by a third party supplier and IZI receives the product as one device.  Dkt. 56 at 359:25-360:2; 360:7-9.

- IZI's design history files repeatedly refer to the entire CareCushion product as a cushion.  *See, e.g.*, Sklenar Decl. Trial Ex. 21 at IZIMED000335.

- IZI's regulatory submissions to the FDA repeatedly refer to the entire CareCushion product as a cushion.  *See, e.g.*, Sklenar Decl. Trial Ex. 19 at IZIMED000251, 282; Dkt. 57 at 488:8-10, 17-21.

- IZI's engineers refer to the entire CareCushion product as a cushion, and IZI's engineering drawings consider the foam to be only a component of the entire product.  *See* Sklenar Decl. Trial Exs. 222 & 224.

- IZI's CEO admitted that when marketing the product, IZI regularly characterizes the entire CareCushion product as a cushion.  *See* Dkt. 56 at 358:21-23.

- When providing instructions on how to use the product, IZI refers to the entire CareCushion product as a cushion.  *See* Dkt. 56 at 356:9-15.

Based on this evidence, the Jury was free to reject IZI's tortured position that the CareCushion is two separate things, a foam cushion and a plastic substrate, such that the foam cushion is not "installed" or "applied" as required by claims 17 and 33.

---

[11] IZI's expert admitted that the definition of cushion that he used to reach his non-infringement opinion was narrower than what the Court provided to the Jury.  *See* Dkt. 57 at 486:13-17. As such, the Jury was within its rights to disregard his opinion that the CareCushion is not a cushion.

## IV. CONCLUSION

For the foregoing reasons, Hologic respectfully requests that the Court deny IZI's motion for JMOL and leave the Jury's verdict undisturbed.

August 10, 2011                                   Respectfully submitted,

                                        /s/    Matthew M. Wolf
                                    Matthew M. Wolf (admitted *pro hac vice*)
                                    Ali R. Sharifahmadian (admitted *pro hac vice*)
                                    John A. Freedman (BBO #629778)
                                    Arnold & Porter LLP
                                    555 Twelfth Street, N.W.
                                    Washington, DC 20004
                                    Telephone:  +1 202.942.5000
                                    Facsimile:  +1 202.942.5999
                                    E-Mail:  Matthew.Wolf@aporter.com
                                    E-Mail:  Ali.Sharifahmadian@aporter.com
                                    E-Mail:  John.Freedman@aporter.com

                                    Jennifer Sklenar (admitted *pro hac vice*)
                                    Ryan Nishimoto (admitted *pro hac vice*)
                                    Brian Martinez (admitted *pro hac vice*)
                                    Arnold & Porter LLP
                                    777 South Figueroa Street
                                    Forty-Fourth Floor
                                    Los Angeles, California 90017-5844
                                    Telephone:  +1 213.243.4000
                                    Facsimile:  +1 213.243.4199
                                    E-Mail:  Jennifer.Sklenar@aporter.com

                                    *Attorneys for Plaintiff*
                                    HOLOGIC, INC.

Certificate of Service

In accordance with Local Rules 5.2(b) and 5.4(C), I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on August 10, 2011.

    /s/    Matthew M. Wolf
Matthew M. Wolf (admitted *pro hac vice*)
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC 20004
Telephone:  +1 202.942.5000
Facsimile:  +1 202.942.5999
E-Mail:  Matthew.Wolf@aporter.com